IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Jason Christopher Roberts,        )
                                      )     C.A. No. 6:05-1221-HMH
                 Plaintiff,     )
                                        )     **OPINION AND ORDER**
                 vs.           )
                                        )
Laurens County Sheriff's Department,  )
Jim Moore, Personally and in his previous )
capacity as Sheriff of Laurens County, and )
Mike Eaton as Investigator of said     )
Department and in his individual capacity )
personally,                       )
                                        )
              Defendants.    )

This matter is before the court on Laurens County Sheriff's Department ("Sheriff's Department"), Jim Moore ("Moore"), and Mike Eaton's ("Eaton") (collectively "Defendants") motion for summary judgment. After a careful review, the court grants the Defendants' motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 3, 1995, Eaton, a South Carolina law enforcement officer, sought a warrant for Jason Christopher Roberts' ("Roberts") arrest. Eaton provided a South Carolina magistrate judge an affidavit in which Eaton stated that Roberts entered Bobby's Trading Post in Laurens, South Carolina, on January 9, 1992. (Defs.' Mem. Supp. Summ. J. Ex. 4 (Arrest Warrant 1).) Eaton averred that Roberts approached Bobby Marler ("Marler"), the owner of the shop, beat Marler in the head with a rifle, killing him, and took approximately $3000 in cash from Marler's body. (Id.) Roberts was arrested pursuant to an arrest warrant and was

1

indicted October 16, 1995, for murder, armed robbery, and violation of South Carolina Code

of Laws section 16-23-490.  (Id. Ex. 7 (Indictment).)  Roberts was convicted of murder in the

Laurens County Court of General Sessions and was sentenced to life in prison on October 20,

1996.  (Id. Ex. 8 (Post Conviction Relief Order 1).)  Roberts appealed his conviction and

sentence, and they were affirmed on October 22, 1997.  (Id.)

Roberts sought Post-Conviction Relief ("PCR"), and the South Carolina Court of

Common Pleas held a hearing on May 13, 2002.  In its order of October 8, 2002, granting

Roberts' PCR application, the PCR court found that Roberts' trial counsel had been

ineffective in "(1) his cross-examination of Gary Gleen and Thomas Whitehead, Jr.; (2)

failing to object to prejudicial evidence being introduced; (3) failing to seek a mistrial after the

jury heard the prejudicial evidence; and (4) failing to seek a mistrial after the jury asked who

was on trial."  (Id. Ex. 8 (PCR Order at 4).)  As a result of these errors, the PCR court

vacated Roberts' conviction and sentence and remanded the case for a new trial.  The State of

South Carolina appealed.

On appeal, the South Carolina Supreme Court found that there was probative evidence

to support the PCR court's determination that Roberts' counsel at trial had been ineffective.

Roberts v. South Carolina, 602 S.E.2d 768, 772 (S.C. 2004).  Specifically, the court noted

that Roberts' trial counsel failed to present evidence concerning the layout of the cells at the

Broad River Correctional Facility, where both James Wallace Willard a/k/a Gary Gleen

("Gleen") and Roberts were imprisoned when Roberts purportedly confessed the murder to

Gleen.  Id. at 770.  The court further noted that there was evidence that Thomas Whitehead,

Jr. ("Whitehead"), one of the witnesses who testified against Roberts, had told some people

that he and his father, not Roberts, had committed the crime.  Id. at 771-72.  Hence, the

Supreme Court affirmed the PCR court's decision to vacate Roberts' conviction and sentence.

Id. at 772.  On March 24, 2005, after the case was remanded, the prosecutor declined to

prosecute the case, noting on a form attached to the indictment that "[t]here is insufficient

evidence to retry at this time" and that the "[c]ase will be reevaluated if new evidence

surfaces."  (Defs.' Mem. Supp. Summ. J. Ex. 7 (Indictment 4).)

Four days later, on March 28, 2005, Roberts brought the instant action in state court.

Roberts alleges in essence that he was wrongly arrested, indicted, and imprisoned.  He alleges

that the facts contained in the affidavit used to obtain Roberts' arrest warrant were untrue, and

that Moore, the Laurens County sheriff at the time, and Eaton, the investigating officer, either

knew or should have known that the facts were untrue.  (Compl. ¶ 6.)  Roberts further

contends that the Defendants used "coercion, force, and intimidation" to obtain statements to

be used against Roberts, including threatening witnesses and putting them in jail.  (Id. ¶¶ 6-7.)

Roberts claims that the witnesses gave statements implicating him due to the Defendants'

trickery, coercion, and duress; the Defendants should have known that the statements were

unreliable; and the Defendants did not properly verify the witnesses' statements.  (Id. ¶ 7.)

Roberts asserts that the Defendants' alleged manipulation of evidence to be used

against him and his subsequent arrest and conviction violated his rights under the Fourth and

Fourteenth Amendments to the United States Constitution and the South Carolina

Constitution.  (Id. ¶¶ 12-14.)  Moreover, Roberts alleges that the Defendants failed to make

exculpatory evidence available to him and provided false and misleading information to

prosecutors and other court officials during Roberts' prosecution.  (Id. ¶ 15.)  Accordingly,

3

Roberts asserts causes of action under 28 U.S.C. § 1983 for violations of his civil rights and under South Carolina law for false arrest, malicious prosecution, and for libel and slander. He seeks actual damages, punitive damages, and attorneys' fees. (Id. ¶ 23.)

The Defendants removed the action on April 25, 2005. On October 25, 2005, the Defendants filed the instant motion for summary judgment. After the Defendants filed a motion to dismiss for failure to prosecute on December 20, 2005, Roberts filed his response on January 3, 2006. The Defendants filed a reply January 17, 2006.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F.Supp. 2d 596, 604 (D. Md. 1998).

**B. Grounds for Summary Judgment**

1. Probable Cause

The Defendants argue that they are entitled to summary judgment on the § 1983 claim and the state law claims for wrongful arrest and malicious prosecution because probable cause existed to arrest and prosecute Roberts.  After a careful review, the court finds that Roberts has failed to "set forth specific facts showing that there is a genuine issue for trial" to support his claim that the arrest warrant and indictment were invalid for lack of probable cause.  Fed. R. Civ. P. 56(e).  The Defendants provided statements given by Gleen and Whitehead which support a finding of probable cause to arrest and indict Roberts.  (Defs.' Mem. Supp. Summ. J. Exs. 3 (Gleen Written Statement), 5 (Whitehead Written Statement), & 6 (Whitehead Oral Statement Trans.).)  Although Roberts contends that Gleen's and Whitehead's statements were untrue and that the Defendants knew or should have known them to be untrue, the court finds that Roberts has failed to identify evidence creating a genuine issue of material fact with respect to whether probable cause existed for him to be arrested and indicted.

5

Because probable cause existed as a matter of law, Roberts' § 1983 claim and his state law claims for false arrest and malicious prosecution fail.  See Pierson v. Ray, 386 U.S. 547, 557 (1967) ("[T]he defense of good faith and probable cause . . . available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983."); Jackson v. City of Abbeville, 623 S.E.2d 656, 658 (S.C. Ct. App. 2005) ("An essential element in each of [Roberts] causes of action [for false imprisonment, malicious prosecution, and violation of the state constitution] is the lack of probable cause to arrest him.").  Accordingly, the Defendants are entitled to summary judgment on those claims.

### 2.  Defamation

The Defendants argue that they are entitled to summary judgment on the defamation claims because their alleged statements were subject to an absolute privilege.  Upon review, the Defendants are entitled to summary judgment because Roberts has failed to provide sufficient evidence to overcome the Defendants' argument that the statements were privileged.

In his complaint, Roberts alleges that the Defendants' defamed him throughout the investigation and trial, and even "after the case was over."  (Compl. ¶¶ 21-22; Roberts' Resp. Opp'n Summ. J. 4.)  However, the details of the alleged false statements are vague.  In response to the Defendants' motion for summary judgment, Roberts explained that "numerous statements were made at trial and in other locations and to numerous persons that the Plaintiff was a murderer and that this impugned and harmed his image and standing in the community at large."  (Roberts' Resp. Opp'n Summ. J. 1.)

The Defendants argue that any statement which occurred during the process of the investigation and trial would be subject to the absolute privilege.  In <u>Crowell v. Herring</u>, 392 S.E.2d 464, 467 (S.C. Ct. App. 1999), the South Carolina Court of Appeals held that "the absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relation to it."  <u>See also</u> <u>Pond Place Partners, Inc. v. Poole</u>, 567 S.E.2d 881, 892 (S.C. Ct. App. 2002) ("The [absolute] privilege covers anything that may be said in relation to the matter at issue, whether it be in the pleadings, in affidavits, or in open court.")  Roberts has offered no evidence to create a genuine issue of material fact that the alleged defamatory statements or writings bore no "reasonable relation" to his trial.  Therefore, the court finds the Defendants are entitled to summary judgment on the basis of absolute privilege on Roberts' defamation claims.

### 3.  Qualified Immunity

The Defendants are also entitled to summary judgment on the basis of qualified immunity.  The Defendants contend that the facts known to the Defendants supported their belief that Roberts committed the crimes in the indictment, arguing that a "facially valid warrant by a magistrate satisfies the probable cause standard," citing <u>Baker v. McCollan</u>, 443 U.S. 137 (1979), and that a true bill of indictment amounts to a finding that "probable cause does in fact exist for prosecution of those charges," citing <u>White v. Coleman</u>, 277 F. Supp. 292 (D.S.C. 1967).  (Defs.' Mem. Supp. Summ. J. 6.)  They assert that, because probable cause for Roberts' arrest existed as a matter of law, they are entitled to qualified immunity from civil liability.  (<u>Id.</u> at 7.)

7

Roberts does not dispute either that a facially valid warrant existed for his arrest or that a true bill of indictment was rendered before he was prosecuted. Instead, Roberts argues that the warrant and indictment were invalid because they were "issued based upon false and manipulated evidence" which the magistrate judge and grand jury did not know were untrue. (Roberts' Mem. Opp'n Summ. J. 2-3.)

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Police activity conducted pursuant to a warrant generally does not require any deep inquiry into reasonableness because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith. United States v. Leon, 468 U.S. 897, 922 (1984). However, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." Id. The court's inquiry into reasonableness is limited to determining whether a reasonably well-trained officer would have known that the warrants were illegal despite the magistrate judge's authorization. Id. at 922 n. 23.

Certainly, an officer's knowingly providing false information to obtain an arrest warrant or to support an indictment would not be reasonable, and a victim to such practices offering evidence of the same would not be barred from recovery by a qualified immunity defense on a summary judgment motion. However, Roberts has not sufficiently substantiated his allegations that the Defendants knew or should have known that the facts presented before the magistrate judge or grand jury were untrue. As such, Roberts has ultimately failed to "set

8

forth specific facts showing that there is a genuine issue for trial" on whether the Defendants'

alleged actions were unreasonable, and the Defendants are entitled to qualified immunity on

both the § 1983 and state law claims.  Fed. R. Civ. P. 56(e).[1]

Finally, although the grants summary judgment to the Defendants, the court declines to

award the sanctions requested by the Defendants for Roberts' alleged failure to comply with

discovery.

It is therefore

**ORDERED** that the Defendants' motion for summary judgment, document number 18,

is granted.  It is further

**ORDERED** that the Defendants' motion to dismiss for failure to prosecute, document

number 24, is dismissed as moot.  It is further

**ORDERED** that the Defendants' motion for sanctions and/or to dismiss for failure to

answer discovery requests, document number 17, is denied.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
February 15, 2006

---

[1]Because the court grants summary judgment to the Defendants on multiple bases, it
need not consider the remaining arguments lodged by the Defendants in support of their
summary judgment motion.

9